IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-MJ-01743-RN

**United States of America**,

v.

**Justin D. Watson**,

                    Defendant.

**Order**

Defendant Justin D. Watson recently entered a not guilty plea to the charges against him.

Since Watson faces a up to a year in prison if convicted,[1] he has the constitutional right to have his

case resolved by a jury. *Baldwin* v. *New York*, 399 U.S. 66, 68–69 (1970). He has, however, asked

to waive his right to a jury trial and have a judge decide his case. For the reasons below, the court

denies that request.

The Federal Rules of Criminal Procedure set out several requirements that must be met

before a defendant may waive his right to a jury trial. To begin with, the defendant must state, in

writing, that he wishes to do so. Fed. R. Crim. P. 23(a)(1). Then, the United States must consent

to that request. *Id.* Rule 23(a)(2). And finally, the court must approve it. *Id.* Rule 23(a)(3).

Here, Watson has submitted a written waiver of his right to a jury trial and the United States

has consented to it. D.E. 19. But, even so, the court must also agree to allow Watson to forgo his

right to have a jury of his peers decide whether he broke the law. *See Patton* v. *United States*, 281

U.S. 276, 312 (1930) ("[B]efore any waiver can become effective . . . sanction of the court must

---

[1] The United States has charged the defendant with violating the Assimilative Crimes Act by engaging in conduct
that, if committed outside of a federal enclave, that would have violated North Carolina's prohibition on impaired
driving. Criminal Information at 1. If convicted, the defendant is "subject to a like punishment" as if he had violated
North Carolina law. 18 U.S.C. § 13(a). The maximum punishment the court can impose in that circumstance is 12
months in prison. *United States* v. *Kelly*, 989 F.2d 162 (4th Cir. 1993); *United States* v. *Kendrick*, 636 F. Supp. 189
(E.D.N.C. 1986).

be had[.]"). And as the Supreme Court has explained, while a defendant may choose to forgo a jury trial and have his case decided by a judge, he has no right to do so. *Id.* ("In affirming the power of the defendant in any criminal case to waive a trial by a constitutional jury and submit to trial . . . by the court, we do not mean to hold that the waiver must be put into effect at all events.").

So how does the court determine whether to grant a defendant's request to waive his right to a jury trial? As a lower federal court, this court first looks to precedent from the Supreme Court and the Fourth Circuit Court of Appeals. *See Edmo* v. *Corizon, Inc.*, 949 F.3d 489, 506 (9th Cir. 2020) (Bumatay, J., dissenting from denial of rehearing en banc). If one of those courts has spoken to the issue at hand, this court is duty bound to follow their holding. *Id.*

There is limited guidance on this point from those courts. The Supreme Court has cautioned that trial courts should not dispense with jury trials "as a mere matter of rote[.]" *Patton*, 281 U.S. at 312. Instead, they should consider a waiver request "with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity." *Id.* But beyond that, neither court with binding authority over this one has established a test to assess a defendant's request to waive his constitutionally provided right to a jury trial.

Without precedent as a guide, the court is guided by its "duty to interpret the Constitution in light of its text, structure, and original understanding." *NLRB* v. *Noel Canning*, 573 U.S. 513, 573 (2014) (Scalia, J., concurring). This task requires the court to attempt to "discern the most likely public understanding of [the jury trial right] at the time it was adopted." *McDonald* v. *City of Chicago, Ill.*, 561 U.S. 742, 828 (2010) (Thomas, J., concurring in part and concurring in judgment). When the text and structure do not directly answer a question, courts should apply a "historical approach" that "examines the laws, practices, and understandings from before and after

ratification that may help the interpreter discern the meaning of the constitutional text and the principles embodied in that text." *United States* v. *Rahimi*, 602 U.S. 680, 717 (2024) (Kavanaugh, J., concurring). *But see id.* at 738 (Barrett, J., concurring) (expressing concerns over the temporal scope of historical evidence relevant to determining the original understanding of a constitutional text).

The Constitution's text suggest that the founding generation placed a high value on the jury trial right. They considered it so important to the preservation of liberty that it is mentioned not once, but twice in that document. In the same article that establishes the federal judiciary, the Constitution provides that "[t]he Trial of all Crimes, except in Cases of Impeachment, shall be by Jury[.]" U.S. Const. art. III, § 2, cl.3. And the right appears once again in the Sixth Amendment, which guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]" U.S. Const. amend. VI.

The criminal jury trial right's history demonstrates that this was no accident. The right's long and venerable pedigree dates to, at least, the Magna Carta of 1215. Magna Carta ¶ 39. (announcing that among the rights of Englishmen was "No free man shall be seized or imprisoned . . . except by the lawful judgment of his equals or by the law of the land."). And it followed English settlers to the colonies. Albert W. Alschuler & Andrew G. Deiss, *A Brief History of Criminal Jury in the United States*, 61 U. Chi. L. Rev. 867, 870 n.13 (1994) ("James I's Charter to the Virginia Company in 1606 promised the colonists who would settle Jamestown a year later that they would enjoy all the rights of Englishmen, including the right to jury trial.").

And in colonial times, infringement by the British on the right to a criminal jury trial was a frequent source of dispute. For example, "In 1765, delegates representing nine state assemblies met in an intercolonial Stamp Act Congress to declare, among other things, 'that trial by jury is

the inherent and invaluable right of every British subject in these colonies[.]'" Akhil Reed Amar, *America's Constitution* at 329 (2005). The First Continental Congress asserted that colonists were "entitled to . . . the great and inestimable privilege of being tried by their peers[.]" 1 Journals of the Continental Congress: 1774–1789 at 69 (Oct 14, 1774) (U.S. GPO, 1904). So too with the Second Continental Congress in July 1775. 2 Journals of the Continental Congress: 1774–1789 at 145 (July 6, 1775) (U.S. GPO, 1904) (criticizing Parliament "for depriving us of the accustomed and inestimable Privilege of Trial by Jury in Cases affecting both Life and Property"). And among the grievances in the Declaration of Independence was that King George III had violated the colonists' rights by "depriving us in many cases the benefits of trial by jury." The Declaration of Independence (U.S. 1776).

What's more, every state constitution during the founding period recognized and protected the right. Va. Const. (1776), Declaration of Rights §§ 8, 11; NJ. Const. (1776), arts. XXII, XXIII; Pa. Const. (1776), Declaration of Rights, arts. IX, XI; Del. Const. (1776), Declaration of Rights, secs. 13, 14; Md. Const. (1776), Declaration of Rights, arts. III, XIX, XXI; N.C. Const. (1776), Declaration of Rights, arts. IX,·XIV; N.Y. Const. (1777), arts. XIII, XLI; Ga. Const. (1777), arts. XL-XLIII, XLV, LXI; S.C. Const. (1778), art. XLI; Mass. Const. (1780). pt. I, arts. XII, XV; N.H. Const. (1784), pt. I, arts. XVI, XX.

And while many aspects of the proposed federal constitution were hotly debated, there was near unanimity about the need to preserve the right to criminal jury trials. As Alexander Hamilton explained in *The Federalist*, "The friends and adversaries of the plan of the convention, if they agree in nothing else, concur at least in the value they set upon the trial by jury; or if there is any difference between them it consists in this: the former regard it as a valuable safeguard to liberty,

the latter represent it as the very palladium of free government." *The Federalist* No. 83 at 432–33 (Alexander Hamilton) (Gideon ed., 2001).

How does all this history impact the court's decision whether to approve Watson's request to waive his right to a jury trial? "The right to trial by jury should mean no less today than it did at the Nation's founding." *Rimlaw v. United States*, No. 24–23, slip op. at 2 (Feb. 24, 2025) (Gorsuch, J., dissenting from denial of certiorari). So given the importance placed by the founding generation on the right to a criminal jury trial, courts should be wary of allowing defendants to forgo that right in the absence of a compelling reason to do so. *See Patton*, 281 U.S. at 312 ("Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses.").

No such reason is present here, so the court denies Watson's request to waive his right to a jury trial.

Dated: September 9, 2025.

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE